JESSICA K. PRIDE (SBN 249212)
jpride@pridelawfirm.com
DANTE PRIDE (SBN 262362)
dpride@pridelawfirm.com
ALFRED VON KESSLER IV (SBN 309453)
avk@pridelawfirm.com
THE PRIDE LAW FIRM
2831 Camino Del Rio S., Suite 104
San Diego, CA 92108
Telephone: (619) 516-8166
Facsimile: (619) 785-3414
Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

J.C.,

      Plaintiff,

v.

UNITED STATES OF AMERICA (FEDERAL BUREAU OF PRISONS); RAY J. GARCIA; ENRIQUE CHAVEZ; ANDREW JONES; and DOES 1-25, inclusive,

      Defendants.

CASE NO.  3:23-cv-4698

**COMPLAINT**

**DEMAND FOR JURY TRIAL**

## INTRODUCTION

1.    Beginning in approximately 2021, Defendant Enrique Chavez ("CHAVEZ"), a correctional officer at Federal Correctional Institution – Dublin ("FCI Dublin") owned and operated by Defendant the United States of America (Federal Bureau of Prisons) ("United States"), sexually assaulted Plaintiff J.C., a minimum-security inmate, in violation of federal and state law.

2.    Beginning in approximately 2021, Andrew Jones ("JONES"), a correctional officer at FCI Dublin owned and operated by Defendant the United States of America, sexually harassed Plaintiff J.C.

THE PRIDE
LAW FIRM

- 1 -

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

3. Congress enacted the Prison Rape Elimination Act in 2003, 34 U.S.C. § 30301, *et seq.* ("PREA") to establish national standards for preventing precisely this kind of sexual abuse from happening to federal inmates. Under PREA, the U.S. Department of Justice promulgated detailed regulations that provide precise procedures that prisons must follow. The Federal Bureau of Prisons ("BOP") adopted PREA policies in response to these regulations.

4. Defendants CHAVEZ and JONES, agents and employees of FCI Dublin, repeatedly subjected Plaintiff to sexual abuse. In doing so, Defendants violated Plaintiff's Constitutional rights and California law on gender violence, sexual assault, and common law on battery.

5. Defendant RAY J. GARCIA ("GARCIA") was the associate warden at FCI Dublin between December 2018 and November 2020, and the warden of FCI Dublin from November 2020 to July 2021 – a time that overlapped with Plaintiff being abused. As the warden, GARCIA was responsible for safekeeping, care, protection, discipline, programming, and release of inmates incarcerated at FCI Dublin. GARCIA was also responsible for hiring, training, and supervising/managing staff, and determining operating procedures and policies.

6. Defendant GARCIA was also arrested and charged with sexual abuse of a ward based on his sexual abuse of multiple female inmates at FCI Dublin. He was found guilty of three counts of having sexual contact with an incarcerated person, four counts of abusive sexual contact, and one count of lying to the FBI. Defendant GARCIA was sentenced to 5 years and 10 months in prison.

7. Defendant GARCIA led training on the Prison Rape and Elimination Act and chaired the audit of FCI Dublin under the PREA. Thus, the man responsible for reporting incidents to the government and teaching inmates how to report rape was in fact a serial rapist of inmates, and he was clearly tolerating abuse by many more of his underlings, including CHAVEZ and JONES.

8.     Defendant GARCIA had actual knowledge that the other correctional officers under his supervision were sexually assaulting inmates before and after Plaintiff was abused. Despite this knowledge, Defendant GARCIA did not do anything to stop it, even though he had a duty to do so. Due to the fact that GARCIA had knowledge of prior sexual abuse at FCI and failing to do anything about it, it allowed FCI agents, representatives, and employees to abuse Plaintiff.

9.     Defendant GARCIA had actual knowledge that inmates complained about the assaults.  Defendant GARCIA knew or should have known that the inmates were subjected to retaliation. Because Defendant GARCIA did not investigate complaints of abuse and harassment and did not do anything to stop it, inmates, including Plaintiff, were abused. Had Defendant GARCIA taken reasonable actions, which he was under a legal duty to perform, Plaintiff would not have been abused.  Defendant GARCIA's intentional indifference to inmate abuse was a substantial factor in Plaintiff suffering abuse.

10.     PREA guidelines and FCI Dublin policies and procedures required all inmate complaints of sexual assault and sexual abuse filed or reported internally be reported to Defendant GARCIA. During GARCIA's tenure, complaints of sexual assaults of inmates by correctional officers and/or staff were reported.

11.     With knowledge of prior abuse against inmates by FCI Dublin, representatives, and employees, Defendant GARCIA failed to protect the inmates and turned a blind eye. Such behavior set the tone for rape culture at FCI Dublin, garnering GARCIA and his subordinate correctional officers and employees the nickname – "the Rape Club."

12.     As a result of Defendants' (including GARCIA's) actions, Plaintiff suffered numerous emotional injuries and incurred severe personal injuries, which continue to affect her today.

THE PRIDE
LAW FIRM

- 3 -

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

13. Further, GARCIA and others inadequately supervised and trained the prison's correctional officers and other employees, including CHAVEZ and JONES.

14. Plaintiff brings this civil action and asserts claims: (1) against CHAVEZ, GARCIA, and DOES 1-25, inclusive, under the Eighth Amendment's Cruel and Unusual Punishment Clause (Excessive Force) and against CHAVEZ under sexual assault statutes, including California's gender violence statute (Civil Code §§ 52.4 and 1708.5); (2) against CHAVEZ under California's battery statute; (3) against GARCIA and Does 1-25, inclusive, under the Eighth Amendment's Cruel and Unusual Punishment Clause (Deliberate Indifference); and (4) against the United States under the Federal Tort Claims Act (28 U.S.C. §§ 1346(b), 1671-2680) ("FTCA") for various tort claims against all Defendants arising under California common law committed within the course and scope of their federal office or employment.

15. For these violations, Plaintiff seeks nominal, compensatory, and punitive damages, attorneys' fees and costs, and any other relief that the Court deems appropriate.

## **JURISDICTION AND VENUE**

16. Plaintiff's claims arise under the United States Constitution, California statutory law, California common law, and the FTCA. The Court has diversity jurisdiction over Plaintiff's entire action under 28 U.S.C. § 1332 because Plaintiff and Defendants are diverse in citizenship and more than $75,000 is in controversy. The Court also has federal question jurisdiction over Plaintiff's Constitutional claims and FTCA claims (which have been administratively exhausted) under 28 U.S.C. § 1331. And the Court has supplemental jurisdiction over Plaintiff's California statutory and common-law claims under 28 U.S.C. § 1367 because these state-law claims arise from a common nucleus of operative fact with Plaintiff's federal question claims.

17.     The Court also has personal jurisdiction over Defendants. The Court has general jurisdiction over Defendants because, on information and belief, each Defendant is a citizen of, and domiciled in, California. The Court has specific jurisdiction over Defendants because they committed the actions and omissions forming the basis for each claim against them in California.

18.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) and 28 U.S.C. § 1402(b). As noted above, Defendants' actions and omissions that give rise to Plaintiff's claims all occurred in this District, at FCI Dublin, located at 5701 8th St., Dublin, California 94568.

## INTRADISTRICT ASSIGNMENT

19.     Pursuant to Civil Local Rule 3-29(d), Plaintiff's action is properly assigned to the San Francisco Division of this District because the action arises from actions and omissions taken in Alameda County, California, where FCI Dublin is located.

## PARTIES

20.     Plaintiff is an individual and citizen of San Diego, California. During the relevant period, Plaintiff was incarcerated at FCI Dublin in Dublin, California.

21.     Upon information and belief, Defendant CHAVEZ is an individual and citizen of California, where he is domiciled. During the relevant period, CHAVEZ worked as a correctional officer at FCI Dublin in the Bureau of Prison's (BOP's) employment. While performing the acts and omissions that Plaintiff alleges in this complaint, CHAVEZ was acting within the scope of his official employment, or with the BOP's permission and consent.

22.     Upon information and belief, JONES is an individual and citizen of California, where he is domiciled. During the relevant period, JONES worked as a correctional officer at FCI Dublin in the Bureau of Prison's (BOP's) employment. While performing the acts and omissions that Plaintiff alleges in this complaint,

JONES was acting within the scope of his official employment, or with the BOP's permission and consent.

23. Upon information and belief, Defendant GARCIA is an individual and citizen of California, where he is domiciled. During the relevant period, GARCIA worked as the warden at FCI Dublin in the BOP's employment. While performing the acts and omissions that Plaintiff alleges in this complaint, GARCIA was acting within the scope of his official employment, or with the BOP's permission and consent.

24. Defendant United States is a governmental entity. During the relevant period, the United States, through the BOP, a federal agency, was in possession and control of FCI Dublin, a minimum-security federal prison located in Dublin, California. The United States has waived sovereign immunity as to Plaintiff's tort claims against Defendants, pursuant to FTCA, 28 U.S.C. § 2674.

25. Plaintiff is ignorant as to the true names, identities, and capacities of Defendants DOES 1 through 25, inclusive. Therefore, Plaintiff sues these Defendants under the fictitious designation of DOES 1 through 25. Plaintiff will amend this Complaint once their identities have been ascertained as well as facts giving rise to their liability.

26. Defendants DOES 1-25, individually and in their official capacities, at all times relevant herein, were correctional officers and/or employees for the BOP, acting in their official capacity. These defendants include correctional officers in supervisory positions that participated in training CHAVEZ and JONES and other employees, in the supervision of CHAVEZ and JONES and other employees, and in reporting incidents of sexual abuse to the BOP.

THE PRIDE
LAW FIRM

- 6 -

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

## STATEMENT OF FACTS

**A.     PREA regulations provide mandatory procedures for preventing, reporting, investigating, and responding to reports of staff sexual abuse of an inmate.**

27.     PREA regulations require the BOP to have a strict "written policy mandating zero tolerance toward all forms of sexual abuse and sexual harassment and outlining the [BOP's] approach to preventing, detecting, and responding to such conduct," which the BOP has adopted.[1]

28.     PREA regulations also comprehensively mandate that the BOP and its correctional staff follow certain policies and procedures when an inmate has allegedly suffered sexual abuse.

29.     First and foremost, the BOP "shall require all staff to report immediately" "any knowledge, suspicion, or information regarding an incident of sexual abuse" and "staff neglect or violation of responsibilities that may have contributed to an incident or retaliation."[2] "Apart from reporting to designated supervisors or officials, staff shall not reveal any information related to a sexual abuse report to anyone other than to the extent necessary, as specified in agency policy, to make treatment, investigation, and other security and management decisions."[3]

30.     Regardless of whether a report of sexual abuse is made, if an inmate is "subject to a substantial risk of imminent sexual abuse, [BOP employees] shall take immediate action to protect the inmate."[4]

31.     Upon receiving a report of inmate sexual abuse, the facility is required to report it to a designated internal investigator[5] and conduct an administrative or criminal investigation.[6] A criminal investigation is required for all allegations of

[1] *See* BOP Program Statement No. 5324.11, at 15 (Jan. 6, 2014); 28 C.F.R. § 115.11(b), (c).
[2] 28 C.F.R. § 115.61(a).
[3] *Id.* § 115.61(b)
[4] *Id.* § 115.62
[5] *Id.* § 115.61(e)
[6] *Id.* § 115.22(a); *see also Id.* § 115.71

THE PRIDE
LAW FIRM

- 7 -

inmate sexual abuse, "unless the allegation does not involve potentially criminal behavior."[7] All such referrals must be documented.[8]

32.    Given the high risk for retaliation against a reporter or victim, the BOP is required to "protect all inmates and staff who report sexual abuse or sexual harassment or cooperate with sexual abuse or sexual harassment investigations from retaliation by other inmates or staff and shall designate which staff members or departments are charged with monitoring retaliation."[9] A prison's PREA compliance manager must monitor an inmate sexual abuse victim for 90 days after a report of abuse is filed to ensure that he or she is not retaliated against by prison staff.[10]

33.    The BOP must also provide ongoing access to mental healthcare to all inmates who have been victimized by sexual abuse while detained in the facility.[11]

34.    The BOP is required to train every employee who may have contact with inmates to comply with the above PREA regulations and must "document, through employee signature or electronic verification, that employees understand the training they have received."[12] In addition to this general training, specialized training is required for sexual abuse investigators.[13]

35.    Where an investigation finds that a staff member has engaged in sexual abuse, the presumptive disciplinary sanction is termination, and some form of discipline is required.[14]

---

[7] *Id.* § 115.22(b)
[8] *Id.*
[9] *Id.* § 115.67(a).
[10] 28 C.F.R. § 115.67(c); BOP Program Statement No. 5324.11, at 44 (Jan. 6, 2014)
[11] *Id.* § 115.83(a), (b), (h).
[12] *Id.* § 115.31.
[13] *Id.* § 115.34.
[14] *Id.* § 115.76.

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

36. Finally, all documentation relating to an allegation of inmate sexual abuse must be maintained[15] and securely retained for at least ten years after the date of initial collection.[16]

37. Defendants repeatedly violated these PREA regulations.

**B. Defendant CHAVEZ routinely subjected Plaintiff to sexual abuse.**

38. Plaintiff began her time at FCI Dublin on July 14, 2021, and throughout her sentence she was subjected to an environment of abuse and discrimination.

39. CHAVEZ was employed as a correctional officer at FCI Dublin. CHAVEZ was assigned to the position of Cook Supervisor/Foreman.

40. Through his authoritative position over Plaintiff, unlawfully and in violation of her civil and constitutional rights, CHAVEZ sexually harassed and assaulted her.

41. In approximately September of 2021, CHAVEZ harassed Plaintiff while she was working in the kitchen.

42. CHAVEZ made comments like, "You'd look good sucking my dick." CHAVEZ also made statements like, "You're going to suck my dick right now, come on."

43. CHAVEZ promised Plaintiff a bonus in return for sexual favors, but she never performed sexual favors for him.

44. CHAVEZ's behavior became worse when he began brushing his erect penis up against Plaintiff (her butt) and said "look, it's hard for you."

45. Plaintiff told CHAVEZ that she was going to tell the warden about the misconduct, but CHAVEZ threatened her and told her he would put her in the Solitary Housing Unit (SHU). It was common for inmates to experience retaliation by getting sent to the SHU, so Plaintiff stayed quiet.

---

[15] *Id.* § 115.87(a), (d).
[16] *Id.* § 115.89(a), (d).

- 9 -

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

46. On March 10, 2022, CHAVEZ was indicted on two counts of abusive sexual contact with a prison inmate. CHAVEZ pled guilty on October 27, 2022, to abusive sexual contact with a female prison inmate while he was employed at FCI Dublin.

47. Through his authoritative position over Plaintiff, unlawfully and in violation of her civil and constitutional rights, CHAVEZ sexually assaulted her. The touching was unwelcome, offensive, and nonconsensual.

48. CHAVEZ's conduct is an example of some of the cruel and unusual punishment that Plaintiff endured at FCI Dublin.

**C. JONES subjected Plaintiff to sexual abuse.**

49. While Plaintiff was working in the kitchen, she also experienced egregious sexual harassment by JONES.

50. Correctional officer JONES made comments similar to CHAVEZ's.

51. JONES told Plaintiff to suck his dick.

52. JONES also made comments like "get on your knees."

53. The harassment persisted whenever she was working.

54. JONES would grab his genitalia and tell her to "look."

55. Together, CHAVEZ and JONES would laugh about the harassment.

56. JONES's conduct is an example of some of the cruel and unusual punishment that Plaintiff endured at FCI Dublin.

57. JONES was indicted on six (6) counts of sexual abuse of a ward and one count of making a false statement to a government agency.

58. His sentencing is set for November 15, 2023.

**D. FCI Dublin is known for its culture of tolerating sexual misconduct.**

59. Based on information and belief, throughout the last three decades, the United States has repeatedly ignored incidents of sexual misconduct at FCI Dublin. Currently, six employees have been indicted by the Department of Justice for

sexual misconduct, five have pled guilty or been convicted, and nine other employees are on administrative leave pending investigation – the most in U.S. history of the Bureau of Prisons. Twenty-five total were under investigation as of May 2022.[17] The following examples are just a fraction of the magnitude of sexual misconduct and violence that transpired at FCI Dublin:

- In 1996, BOP officers took three female inmates from FCI Dublin to a male unit, opened their cell doors, and allowed male inmates to rape them.

- In the late 1990's and early 2000's, four male BOP employees were either convicted or pled guilty to sexually abusing female inmates at FCI Dublin.

- According to the U.S. Senate Report,[18] in the early 2010s, approximately a dozen Dublin employees were removed for their sexual abuse of inmates, "including one who videotaped himself having sex with inmates and stored those tapes in a prison locker. None were arrested."

- In 2019, an FCI inmate, Victoria Peterson, filed a suit against Officer William Martinez for abusing his power and using excessive force to have sex with her. She also sued the warden at the time, Wiley Jenkins, for failing to take disciplinary action against Martinez and allowing him to continue working at FCI Dublin.

- In 2019, inmate L.I. filed a claim against former FCI Dublin chaplain James Highhouse for sexual assault. Highhouse started having unwanted physical contact with L.I. in May of 2018, and although he was ultimately charged with abuse of L.I., prosecutors said he engaged

---

[17] See Lisa Fernandez, 25 Dublin prison employees under investigation for sex, drug, lying abuses, KTVU (May 5, 2022), https://www.ktvu.com/news/25-dublin-prison-employees-under-investigation-for-sex-drug-lying-abuses.

[18] JON OSSOFF & RON JOHNSON, S. REP., SEXUAL ABUSE OF FEMALE INMATES IN FEDERAL PRISONS (2022) (released in conjunction with the permanent subcomm. on investigations December 13, 2022 hearing).

THE PRIDE
LAW FIRM

- 11 -

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

in predatory conduct with at least six women from 2014 to 2019. Highhouse pleaded guilty and was sentenced to seven years in prison.

- Between approximately June of 2020 and September of 2020, inmate A.R. witnessed Klinger's sexual relationship with another inmate. She witnessed Klinger take women into a hidden areas to have sex with him. Klinger and CO Jaime Perez spoke with sexually explicit language toward A.R. CO Perez would bump up against her and grab her breasts. Officer Perez also took photos of A.R.

- Between approximately August 2020 and November 2020, inmate D.V. was pressured into an ongoing sexual relationship with FCI Dublin Correctional Officer Enrique Chavez. CO Chavez kissed her, touched her bare breasts and vagina, and had D.V. touch his penis. CO Chavez was known to bring inmates into the kitchen closet for "meetings."

- In 2021, CO Chavez sexually harassed another inmate, J.C., while was working in the kitchen. CO Chavez would brush his erect penis up against J.C. and said "look, it's hard for you." CO Chavez was charged with abusive sexual contact of a prisoner in violation of 18 U.S.C. § 2244(a)(4). He pled guilty to the conduct and was sentenced to 20 months in prison.

- Another inmate, A.J., suffered sexual abuse at FCI Dublin between approximately September 2021 and May of 2022. When A.J. arrived, Paramedic Fraser Cohen grabbed her breasts with no chaperone. Later throughout her incarceration, CO Nicholas Ramos consistently watched her in the shower, and both CO Ramos and CO Phillips made her strip, cough, and squat for cavity searches.

- From April through October 2020, Klinger manipulated inmate M.R. into performing oral sex and engaging in forced sexual intercourse.
- Saucedo watched inmate A.J. in the shower on multiple occasions. Saucedo ripped open the shower curtain while inmate L.C. was showering, causing her to fall over so he could see her naked body. Saucedo also sexually harassed L.C. by making sexual noises at her and squirting shampoo on her clothing, mimicking ejaculation. Additionally, inmate L.A. was sexually harassed by Saucedo when he forced her to bend over in front of him.
- Inmate D.S. was forced to engage in oral sex with nurse Jeff Wilson. Jeff Wilson also forced inmate L.A. to show him her breasts.
- Another inmate went to TDY (temporary duty) medical employee Jay Alexander (exact name unknown) for medical treatment on her back, and he pulled her underwear down and touched her buttocks and in between her inner thighs.
- Inmate G.M. was preyed upon by Disciplinary Hearing Officer (DHO) David Perez for over three years. David Perez would "make out" with G.M., touch her breasts, caress her, and make her believe he was her boyfriend. When G.M. was on probation, David Perez met up with her and had her touch his genitals.
- Another kitchen foreman, O'Connor (full name unknown) touched inmate N.P.'s buttocks and brushed his hand over her chest.
- CO Jones would tell inmate J.C. to "suck his dick" and he would tell her to "Get on your knees." CO Jones would grab his genitalia and tell her to "look."

60. Upon information and belief, at least 25 FCI Dublin employees, including those who courageously reported and/or acted to prevent instances of sexual violence, have been reassigned to other prisons. This reassignment got the

THE PRIDE
LAW FIRM

- 13 -

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

attention of Congresswoman Jackie Speier, who wrote a letter to the new Director of the Federal Bureau of Prisons, Colette Peters, requesting information about FCI Dublin's "culture of rampant sexual misconduct and subsequent cover-ups."[19]

61.    In December 2022, the United States Senate reported on the Permanent Subcommittee on Investigations findings from its investigation into sexual abuse of female prisoners in custody of the BOP. The report found that in at least four BOP facilities (FCI Dublin being one of them), multiple women endured ongoing sexual abuse for months or years. The report's conclusion stated, "BOP failed to detect or prevent sexual abuse of incarcerated women by male BOP employees. The agency's poor implementation of the audit program and reporting mechanisms required by PREA allowed serious, repeated sexual abuse in at least four facilities to go undetected. BOP's internal affairs practices have failed to hold employees accountable, and multiple admitted sexual abusers were not criminally prosecuted as a result. Further, for a decade, BOP failed to respond to this abuse or implement agency-wide reforms. Moving forward, BOP should consider the Subcommittee's findings as it works to implement changes to how it handles sexual abuse of female prisoners by male BOP employees."[20]

62.    Defendant GARCIA was found guilty of three counts of having sexual contact with an incarcerated person, four counts of abusive sexual contact and one count of lying to the FBI. GARCIA was sentenced to 5 years and 10 months in prison. Former CO Ross Klinger pled guilty to federal criminal charges for Sexual Abuse of a Ward (18 U.S.C. § 2243(b)) stemming out of his conduct against two other inmates and he is awaiting sentencing scheduled for December 13, 2023. A federal jury convicted CO John Bellhouse of five counts of sexually abusing female inmates. Additionally, in March of 2022, Saucedo and CO Nicholas Ramos were

[19] KTVU Fox 2 Reporter Lisa Fernandez: https://www.ktvu.com/news/dublin-prison-guard-says-she-was-forced-out-for-reporting-abuse

[20] JON OSSOF & RON JOHNSON, S.REP., SEXUAL ABUSE OF FEMALE INMATES IN FEDERAL PRISONS (2022) (released in conjunction with the Permanent Subcomm. on Investigations December 13, 2022 hearing).

THE PRIDE
LAW FIRM

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

placed on leave as a result of sexual misconduct allegations. CO Ramos committed suicide on August 21, 2022.

63.    Defendant United States failed to provide the sexual abuse victims with counseling services or victim advocates. The victims were retaliated against with interviews and examinations after filing their Federal Tort Claims. As a result of reporting the misconduct, the victims were put in the Solitary Housing Unit (SHU), received daily room tosses, and were placed on lock downs. The victims also had their phone calls and visitations taken away, their legal mail was read, and their legal phone calls were monitored.

64.    Plaintiff is informed and believes and thereon alleges that at all times herein mentioned, each of the Defendants was the agent, servant, and employee of the remaining Defendants, and at all times herein mentioned, each was acting within the time, place and scope of other Defendants. At all material times, all of the Defendants aided, abetted, authorized, and ratified all of the actions of all of the other Defendants. Plaintiff is informed and believes, and based thereupon alleges, that at all material times, Defendants, and each of them, were the agents, employees, managing agents, supervisors, coconspirators, parent corporation, joint employers, alter ego, and/or joint ventures of the other Defendants, and each of them, and in doing the things alleged herein, were acting within the course and scope of said agency, employment, conspiracy, joint employer, alter ego status, and/or joint venture and with the permission and consent of each of the other Defendants. Whenever and wherever reference is made in this Complaint to any act or failure to act by a Defendant or co-Defendant, such allegations and references shall also be deemed to mean the acts and/or failures to act by each Defendant acting individually, jointly and severally.

THE PRIDE
LAW FIRM

- 15 -

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

## CLAIMS FOR RELIEF

## CLAIM ONE

## EIGHTH AMENDMENT, CRUEL AND UNUSUAL PUNISHMENT – SEXUAL ABUSE

**(Against GARCIA, CHAVEZ, and DOES 1-25, inclusive, in their individual capacities)**

65. Plaintiff repeats and incorporates by reference every allegation contained in any paragraph as if fully set forth herein.

66. Plaintiff brings this claim under the Cruel and Unusual Punishment Clause of the Eighth Amendment to the U.S. Constitution against CHAVEZ, GARCIA, and DOES 1-25, inclusive, in their individual capacities.

67. At all material times, against CHAVEZ, GARCIA, and DOES 1-25, inclusive, were federal employees of the BOP at FCI Dublin, acting under the color of federal authority with respect to the allegations in this complaint.

68. CHAVEZ violated Plaintiff's right to be free from cruel and unusual punishment by repeatedly sexually abusing her while she was incarcerated as a minimum-security inmate at FCI Dublin.

69. CHAVEZ'S sexual abuse of Plaintiff occurred under coercive circumstances.

70. By intentionally subjecting Plaintiff to sexual acts, CHAVEZ acted maliciously, in a manner that is deeply offensive to human dignity and void of any penological justification.

71. The inhumane conditions of confinement caused by CHAVEZ's repeated sexual abuse caused Plaintiff severe physical, mental, and emotional harm.

72. GARCIA was the warden during the period that Plaintiff was being abused by CHAVEZ. As the warden, GARCIA was responsible for safekeeping, care, protection, discipline, programming, and release of inmates incarcerated at

FCI Dublin. GARCIA was also responsible for hiring, training, and supervising/managing staff, and determining operating procedures and policies.

73. GARCIA was also sexually abusing wards at FCI Dublin, and in his capacity as warden, thus ratified CHAVEZ's and JONES' behavior. GARCIA led PREA training and chaired the audit of FCI Dublin under PREA. Thus, the man responsible for teaching inmates how to report rape was in fact a serial rapist of inmates.

74. GARCIA had knowledge of abuses occurring at FCI Dublin prior to the sexual abuse of Plaintiff. Garcia did nothing to stop it, including failing to conduct an investigation among other things. GARCIA had a legal duty to investigate complaints of abuse. He did not. This failure caused and was a substantial factor in allowing abuses to continue to occur to inmates, including Plaintiff.

75. GARCIA accepted guilt for his sexual abuse of other inmates, and GARCIA knew or should have known that CHAVEZ and JONES were sexually abusing and harassing Plaintiff.

76. CHAVEZ, GARCIA, and DOES 1-25, inclusive, acted with malice and oppression, and their conduct constitutes a reckless or callous disregard of Plaintiff's rights, entitling Plaintiff to punitive damages.

77. Plaintiff seeks the following relief for her injuries: (a) nominal damages resulting from the repeated violations of her personal dignity and from physical injury; (b) non-economic damages consisting of past physical injury, past and future mental pain and suffering, mental anguish, emotional distress, and for offenses to her personal dignity; and (c) punitive damages.

78. Plaintiff makes these allegations against DOES 1-25, inclusive.

THE PRIDE
LAW FIRM

- 17 -

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

## CLAIM TWO

### GENDER VIOLENCE (Cal. Civ. Code § 52.4)

### (Against CHAVEZ and DOES 1-25, inclusive, their individual capacities)

79.     Plaintiff repeats and incorporates by reference every allegation contained in any paragraph as if fully set forth herein.

80.     Plaintiff brings this claim for gender violence under California Civil Code § 52.4 against CHAVEZ and DOES 1-25, inclusive, in their individual capacities.

81.     Under California statute, any person subjected to gender violence may bring a civil action for damages against the responsible party. Gender violence is a form of sex discrimination that includes a physical intrusion or invasion of a sexual nature under coercive conditions.

82.     CHAVEZ discriminated against Plaintiff based on her female gender when he repeatedly sexually abused her, by physically subjecting her to sexual acts, under the coercive conditions that were present between them.

83.     CHAVEZ's actions and judgments in sexually abusing Plaintiff were so far below the acceptable standard of custodial conduct, as exemplified by PREA regulations and BOP policy prohibiting sexual abuse, that they could not have been making a policy judgment in his decision to sexually abuse Plaintiff.

84.     By repeatedly subjecting Plaintiff to sexual acts, CHAVEZ caused her to suffer physical, mental, and emotional injuries, as well as injuries to her personal dignity.

85.     CHAVEZ acted with malice and oppression and his conduct constitutes a reckless or callous disregard of Plaintiff's rights, entitling her to punitive damages.

86.     Plaintiff seeks the following relief for her injuries: (a) nominal damages resulting from the repeated violations of her personal dignity and from physical injury; (b) non-economic damages consisting of past physical injury, past

and future mental pain and suffering, mental anguish, emotional distress, and for offenses to her personal dignity; and (c) punitive damages.

87. These allegations are asserted against DOES 1-25, inclusive.

88. Plaintiff also seeks attorneys' fees and costs, as expressly authorized by statute.

## CLAIM THREE

### SEXUAL ASSAULT (Cal. Civ. Code § 1708.5)

**(Against CHAVEZ and DOES 1-25, inclusive, in their individual capacities)**

89. Plaintiff repeats and incorporates by reference every allegation contained in any paragraph as if fully set forth herein.

90. Plaintiff brings this claim for sexual assault under California Civil Code § 1708.5 against CHAVEZ and DOES 1-25, inclusive, in their individual capacities.

91. CHAVEZ violated Plaintiff's statutory right to be free from sexual assault by repeatedly sexually abusing her while she was incarcerated as a minimum-security inmate at FCI Dublin.

92. CHAVEZ'S sexual abuse of Plaintiff occurred under coercive circumstances.

93. For these reasons, CHAVEZ'S sexual abuse of Plaintiff, an inmate in the custody of his employer, was deeply offensive to her personal dignity, would offend a person of ordinary sensitivity, and was unwarranted by the social usages in prison when the contact was made.

94. Given the deeply offensive nature of these sexual acts and lack of any possible penological justification for these sexual acts, CHAVEZ must have subjected Plaintiff to these sexual acts with the intent to cause a harmful or offensive contact with Plaintiff's person.

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

95. By intentionally subjecting Plaintiff to sexual acts, CHAVEZ acted maliciously, in a manner that is deeply offensive to human dignity and void of any penological justification.

96. CHAVEZ'S actions and judgment in sexually abusing Plaintiff were so far below the acceptable standard of custodial conduct, as exemplified by PREA regulations and BOP policy prohibiting sexual abuse, that he could not have been making a policy judgment in his decision to sexually abuse Plaintiff.

97. By repeatedly subjecting Plaintiff to sexual acts, CHAVEZ caused her to suffer physical, mental, and emotional injuries, as well as injuries to her personal dignity.

98. CHAVEZ acted with malice and oppression, and his conduct constitutes a reckless or callous disregard of Plaintiff's rights, entitling her to punitive damages.

99. Plaintiff seeks the following relief for her injuries: (a) nominal damages resulting from the repeated violations of her personal dignity and from physical injury; (b) non-economic damages consisting of past physical injury, past and future mental pain and suffering, mental anguish, emotional distress, and for offenses to her personal dignity; and (c) punitive damages.

100. All these allegations are asserted against DOES 1-25, inclusive.

## CLAIM FOUR

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

#### (California common law)

#### (Against CHAVEZ, JONES, and DOES 1-25, inclusive, in their individual capacities)

101. Plaintiff repeats and incorporates by reference every allegation contained in any paragraph as if fully set forth herein.

THE PRIDE
LAW FIRM

- 20 -

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

102. Plaintiff brings this claim for intentional infliction of emotional distress under California common law against CHAVEZ and JONES in their individual capacities.

103. CHAVEZ and JONES engaged in outrageous conduct by repeatedly subjecting Plaintiff to sexual acts while she was incarcerated as an inmate in their employer's custody. CHAVEZ and JONES abused their authority over Plaintiff and their power to affect her interests in a manner that was beyond all bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized society.

104. CHAVEZ's and JONES' sexual abuse and harassment caused Plaintiff to suffer, and continue to suffer, severe emotional distress, including fear, depression, and anxiety. This distress was so substantial and enduring that no reasonable person in a civilized society should be expected to endure it.

105. CHAVEZ and JONES intended to cause Plaintiff this emotional distress because they knew that emotional distress was certain to result from their sexual abuse of an inmate.

106. CHAVEZ's and JONES' actions and judgments in sexually abusing Plaintiff were so far below the acceptable standard of custodial conduct, as exemplified by PREA regulations and BOP policy prohibiting sexual abuse, that they could not have been making a policy judgment in their decision to sexually abuse Plaintiff.

107. CHAVEZ and JONES acted with malice and oppression, entitling Plaintiff to punitive damages.

108. Plaintiff seeks the following relief for her injuries: (a) nominal damages resulting from the repeated violations of her personal dignity and from physical injury; (b) non-economic damages consisting of past physical injury, past and future mental pain and suffering, mental anguish, emotional distress, and for offenses to her personal dignity; and (c) punitive damages.

THE PRIDE
LAW FIRM

- 21 -

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

109. These allegations are asserted against DOES 1-25, inclusive.

## CLAIM FIVE

## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

### (California common law)

### (Against CHAVEZ and DOES 1-25, inclusive, in their individual capacities)

110. Plaintiff repeats and incorporates by reference every allegation contained in any paragraph as if fully set forth herein.

111. Plaintiff brings this claim for negligent infliction of emotional distress under California common law against CHAVEZ and DOES 1-25, inclusive, in their individual capacities.

112. CHAVEZ and DOES 1-25, inclusive, had a special and heightened duty of care to Plaintiff as her jailers that required them to protect her against reasonably foreseeable emotional harm, including from sexual abuse. PREA regulations and BOP policy prohibiting sexual abuse confirm this special and heightened duty.

113. Alternatively, CHAVEZ and DOES 1-25, inclusive, had a general duty of care with respect to Plaintiff.

114. CHAVEZ and DOES 1-25, inclusive, engaged in negligent conduct and in a willful violation of statutory standards. On multiple occasions, CHAVEZ and DOES 1-25, inclusive, breached their duty of care and the PREA regulations by purposefully and willingly subjecting Plaintiff to sexual acts. CHAVEZ's and DOES 1-25's breach of their duty of care and willful violations of statutory standards were directed at Plaintiff.

115. By repeatedly subjecting Plaintiff to sexual acts, CHAVEZ and DOES 1-25, inclusive, proximately caused her to suffer, and to continue to suffer, serious and severe emotional distress.

116. Plaintiff's emotional reactions are not an abnormal response to her sexual abuse. A reasonable person would be unable to cope with the mental distress

caused by being sexually abused by a BOP employee who had a duty to protect her from such abuse. No reasonable person in a civilized society should be expected to endure that kind of mental distress.

117. CHAVEZ's and DOES 1-25's actions and judgments in sexually abusing Plaintiff were so far below the acceptable standard of custodial conduct, as exemplified by PREA regulations and BOP policy prohibiting sexual abuse, that they could not have been making a policy judgment in their decision to sexually touch Plaintiff.

118. CHAVEZ and DOES 1-25, inclusive, acted with malice and oppression, and their conduct constitutes a reckless or callous disregard of Plaintiff's rights, entitling her to punitive damages.

119. Plaintiff seeks the following relief for her injuries: (a) nominal damages resulting from the repeated violations of her personal dignity and from physical injury; (b) non-economic damages consisting of past physical injury, past and future mental pain and suffering, mental anguish, emotional distress, and for offenses to her personal dignity; and (c) punitive damages.

120. These allegations are asserted against DOES 1-25, inclusive.

## CLAIM SIX

### BATTERY (California common law)

### (Against CHAVEZ and DOES 1-25, inclusive, in their individual capacities)

121. Plaintiff repeats and incorporates by reference every allegation contained in any paragraph as if fully set forth herein.

122. Plaintiff brings this claim for battery under California common law against CHAVEZ and DOES 1-25, inclusive, in their individual capacities.

123. CHAVEZ and DOES 1-25, inclusive, committed battery against Plaintiff by repeatedly sexually abusing her while she was incarcerated as a minimum-security inmate at FCI Dublin.

THE PRIDE
LAW FIRM

- 23 -

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

124. CHAVEZ's and DOES 1-25's sexual abuse of Plaintiff occurred under coercive circumstances.

125. For these reasons CHAVEZ's and DOES 1-25's sexual abuse of Plaintiff, an inmate in the custody of their employer, was deeply offensive to her personal dignity, would offend a person of ordinary sensitivity, and was unwarranted by the social usages in prison when the contact was made.

126. Given the deeply offensive nature of these sexual acts and lack of any possible penological justification for these sexual acts CHAVEZ and DOES 1-25, inclusive, must have subjected Plaintiff to these sexual acts with the intent to cause harmful or offensive contact with Plaintiff's person.

127. By intentionally subjecting Plaintiff to sexual acts, CHAVEZ and DOES 1-25, inclusive, acted maliciously in a manner that is deeply offensive to human dignity and void of any penological justification.

128. CHAVEZ's and DOES 1-25's actions and judgments in sexually abusing Plaintiff were so far below the acceptable standard of custodial conduct, as exemplified by PREA regulations and BOP policy prohibiting sexual abuse, that they could not have been making a policy judgment in his decision to sexually abuse Plaintiff.

129. By repeatedly subjecting Plaintiff to sexual acts, CHAVEZ and DOES 1-25, inclusive, caused her to suffer physical, mental, and emotional injuries, as well as injuries to her personal dignity.

130. CHAVEZ and DOES 1-25, inclusive, acted with malice and oppression, and their conduct constitutes a reckless or callous disregard of Plaintiff's rights, entitling her to punitive damages.

131. Plaintiff seeks the following relief for her injuries: (a) nominal damages resulting from the repeated violations of her personal dignity and from physical injury; (b) non-economic damages consisting of past physical injury, past

THE PRIDE
LAW FIRM

- 24 -

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

and future mental pain and suffering, mental anguish, emotional distress, and for offenses to her personal dignity; and (c) punitive damages.

132. These allegations are asserted against DOES 1-25, inclusive.

## CLAIM SEVEN

## EIGHTH AMENDMENT, DELIBERATE INDIFFERENCE – FAILURE TO PROTECT

### (Against GARCIA and DOES 1-25, inclusive, in their individual capacities)

133. Plaintiff repeats and incorporates by reference every allegation contained in any paragraph as if fully set forth herein.

134. Plaintiff brings this claim against GARCIA and DOES 1-25, inclusive, in their individual capacities under the Cruel and Unusual Punishment Clause of the Eighth Amendment to the United States Constitution.

135. At all material times, GARCIA and DOES 1-25, inclusive, were federal employees, acting under the color of federal authority with respect to the allegations set forth above.

136. GARCIA and DOES 1-25, inclusive, deprived Plaintiff of her right to be free from cruel and unusual punishment by failing to protect her from a substantial risk of serious harm from sexual abuse CHAVEZ and JONES, by acting in conscious disregard of that known risk.

137. Despite having actual knowledge of abuse, GARCIA, as the warden, ratified CHAVEZ's and JONES' conduct by engaging in the same or similar acts as CHAVEZ and JONES with other inmates at FCI Dublin. Therefore, GARCIA purposefully denied Plaintiff protection from the known and substantial risk of serious harm of CHAVEZ's and JONES' sexual abuse.

138. Prior to Plaintiff's sexual abuse, GARCIA had knowledge of prior abuses occurring at FCI Dublin and did nothing to stop it, including failing to conduct an investigation among other things. GARCIA had a legal duty to investigate complaints of abuse. Despite knowledge of abuse, GARCIA did not

investigate any complaints.  This failure caused and was a substantial factor in allowing abuses to continue to occur to inmates, including Plaintiff.  GARCIA consciously allowed inmates, including Plaintiff, to be abused.

139.   Based on his position and behavior in the prison, GARCIA knew or should have known that CHAVEZ and JONES were abusing and harassing Plaintiff.

140.   GARCIA and DOES 1-25, inclusive, failed to take immediate action to protect Plaintiff, including not separating her from CHAVEZ and JONES, in violation of 28 C.F.R. § 115.62.

141.   GARCIA and DOES 1-25, inclusive, did not take reasonable, available measures to abate the risk of sexual abuse to Plaintiff, and to guarantee her safety, even though a reasonable officer in the circumstances would have appreciated the obviously high degree of risk involved.

142.   GARCIA and DOES 1-25, inclusive, therefore acted with deliberate indifference to substantial risk of sexual abuse in violation of the Eighth Amendment, subjected Plaintiff to dangerous and debasing conditions of confinement, including sexual abuse, and violated her fundamental rights to safe and humane confinement. This cruel and unusual punishment caused Plaintiff physical, mental, emotional, and constitutional injuries.

143.   GARCIA's and DOES 1-25's, inclusive, deliberate indifference was malicious, oppressive, reckless, and callous, entitling Plaintiff to punitive damages.

144.   Plaintiff seeks the following relief for her injuries: (a) nominal damages resulting from the repeated violations of her personal dignity and from physical injury; (b) non-economic damages consisting of past physical injury, past and future mental pain and suffering, mental anguish, emotional distress, and for offenses to her personal dignity; and (c) punitive damages.

THE PRIDE
LAW FIRM

- 26 -

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

**FEDERAL TORT CLAIMS ACT ADMINISTRATIVE EXHAUSTION**

145.  Claims EIGHT and NINE, below, are asserted against the United States.

146.  Plaintiff has exhausted these claims against the United States under the FTCA.

147.  Plaintiff submitted a "Claim for Damage Injury, or Death" to the BOP for "permanent injuries, mental anguish, embarrassment, humiliation, pain, distress, and damages" as a PREA victim involving staff at FCI Dublin in the sum of $5,000,000.00.

148.  A true and correct copy of Plaintiff's FTCA claim is attached hereto as **Exhibit A**.

149.  The BOP received her administrative claim on January 31, 2023.

150.  A true and correct copy of the BOP's acknowledgment is attached hereto as **Exhibit B**.

151.  By July 31, 2023, six months after the BOP received Plaintiff's administrative claim, the BOP has neither accepted nor rejected the claims. Pursuant to 28 U.S.C. § 2675(a), Plaintiff elects to consider this failure to act as a final denial of her claim.

## CLAIM EIGHT

### NEGLIGENCE (FTCA, California common law)

### (Against the United States)

152.  Plaintiff repeats and incorporates by reference every allegation contained in any paragraph as if fully set forth herein.

153.  Plaintiff brings this claim against the United States under the FTCA based on the actions and/or omissions of United States, CHAVEZ, JONES, GARCIA, and DOES 1-25, inclusive, taken while working at FCI Dublin in their capacities as employees of the BOP and acting within the scope of their employment, with the permission and consent of the United States.

THE PRIDE
LAW FIRM

- 27 -

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

154. At all material times, Plaintiff was an inmate in the custody of the BOP, a federal agency of the United States in possession and control of FCI Dublin.

155. **Duty**. United States, CHAVEZ, JONES, GARCIA, and DOES 1-25, inclusive, had a custodial duty, as well as a mandatory statutory obligation under PREA regulations and BOP policy, to protect inmates incarcerated by the United States from foreseeable harm, including, but not limited to, harm from sexual abuse.

156. The BOP's Personal Conduct rules for staff disallow any sexual activity with an inmate, and state that an employee may not allow another person to engage in such behavior. It explicitly states that there is no such thing as consensual sex between staff and inmates.

157. Alternatively, United States, CHAVEZ, JONES, GARCIA, and DOES 1-25, inclusive, had a general duty of care to Plaintiff.

158. CHAVEZ's and JONES' sexual abuse and harassment of Plaintiff was reasonably foreseeable to the United States because CHAVEZ's and JONES' conduct made it obvious they were sexually abusing Plaintiff.

159. **Breach of duty—inadequate supervision**. The United States failed to supervise and operate FCI Dublin in a manner that would have prevented CHAVEZ's and JONES' ongoing sexual abuse and harassment of Plaintiff.

160. The United States did not take reasonable, available measures to abate the risk of sexual abuse to Plaintiff, and to guarantee her safety, even though a reasonable administrator would have complied with PREA regulations regarding proper prison operations, including adequately monitoring work programming and correctional officer assignments.

161. CHAVEZ's and JONES' sexual abuse of Plaintiff occurred as the direct and proximate result of the supervisory negligence of the United States.

162. **Injuries and relief sought**. Plaintiff suffered a physical violation, a violation of her liberty interest in being free from sexual abuse, injury from being

- 28 -

denied freedom of movement and programming, and severe mental and emotional anxiety and distress, and will continue to suffer severe mental and emotional anxiety and distress in the future.

163.   Plaintiff seeks the following relief for her injuries: non-economic damages consisting of past physical injury, past and future mental pain and suffering, mental anguish, emotional distress, and for offenses to her personal dignity.

## CLAIM NINE

### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

**(FTCA, California law)**

**(Against the United States)**

164.   Plaintiff repeats and incorporates by reference every allegation contained in any paragraph as if fully set forth herein.

165.   Plaintiff brings this claim against the United States under the FTCA based on the actions and/or omissions of United States, CHAVEZ, JONES, GARCIA, and DOES 1-25, inclusive, which were taken while working at FCI Dublin in their capacities as employees of the BOP and acting within the scope of their employment, with the United States' permission and consent.

166.   At all material times, Plaintiff was an inmate in the custody of the BOP, a federal agency of the United States in possession and control of FCI Dublin.

167.   **Duty**. United States, CHAVEZ, JONES, GARCIA, and DOES 1-25, inclusive, had a custodial duty, as well as a mandatory statutory obligation under PREA regulations and BOP policy, to protect inmates incarcerated by the United States from foreseeable harm, including, but not limited to, harm from sexual abuse.

168.   **Breach of duty—inadequate supervision**. The United States failed to supervise and operate FCI Dublin in a manner that would have prevented CHAVEZ's and JONES' ongoing sexual abuse and harassment of Plaintiff.

169. The United States did not take reasonable, available measures to abate the risk of sexual abuse to Plaintiff, and to guarantee her safety, even though a reasonable administrator would have complied with PREA regulations regarding proper prison operations, including adequately monitoring work programming and correctional officer assignments.

170. CHAVEZ's and JONES' sexual abuse and harassment of Plaintiff occurred as the direct and proximate result of the supervisory negligence of the United States.

171. **Injuries and relief sought**. The United States', CHAVEZ's, JONES', and DOES 1-25's, inclusive, actions and omissions caused Plaintiff to suffer, and continue to suffer, serious and severe emotional distress, including fear, depression, and anxiety, because of being repeatedly sexually abused.

172. Plaintiff's emotional reaction was not an abnormal response to her sexual abuse. A reasonable person would be unable to cope with the emotional distress caused by being sexually abused by a correctional officer, who had a duty to protect her from such abuse. Plaintiff's distress was of such a substantial and enduring quality that no reasonable person in a civilized society should be expected to endure it.

173. By reason of the United States' negligent infliction of emotional distress Plaintiff has suffered severe emotional distress and will continue to suffer severe mental and emotional anxiety and distress.

174. Plaintiff seeks nominal and compensatory damages for these violations.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a jury trial on all claims so triable.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays that this Court grant the following relief:

1. Nominal damages in an amount to be determined at trial;

THE PRIDE
LAW FIRM

- 30 -

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

2.  Compensatory damages for injuries caused by a violation of her constitutional rights and personal dignity, physical injury, pain, discomfort, fears, anxiety, and other mental and emotional distress suffered by Plaintiff and for similar suffering reasonably certain to be experienced in the future, in an amount to be determined at trial;

3.  Punitive damages for malice, oppression, and reckless and callous disregard of Plaintiff's rights;

4.  An award to Plaintiff of reasonable costs; and

5.  An award to Plaintiff of reasonable attorneys' fees pursuant to 28 U.S.C. § 2678 and Cal. Civ. Code § 52.4; and

6.  Such other and further relief as the Court may deem fit and proper.

Respectfully Submitted,

Dated: September 13, 2023          **THE PRIDE LAW FIRM**

/s/ Jessica K. Pride

Jessica K. Pride

Email: jpride@pridelawfirm.com

Attorneys for Plaintiff

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL